# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYNOR RODRIGUEZ, | 1:09-cv-00372-LJO-SMS (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction for second degree murder in the Orange County Superior Court. Petitioner is serving a sentence of 19 years-to-life.

In the instant petition for writ of habeas corpus Petitioner does not challenge the validity of the state court judgment; rather, Petitioner challenges the Board of Parole Hearings' (Board) 2007 decision finding him unsuitable for release.

Petitioner filed a state petition for writ of habeas corpus in the Orange County Superior Court challenging the 2007 Board decision. The superior court denied the petition in a reasoned decision finding there was some evidence to support the Board's decision that Petitioner would pose an unreasonable risk of danger to society. (Exhibit 1, to Answer.)

Petitioner then filed a state petition for writ of habeas corpus in the California Court of Appeal. (Exhibit 2, to Answer.) The petition was summarily denied.[1] (Id.)

Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court. The petition was summarily denied. (Exhibit 3, to Answer.)

Petitioner filed the instant petition for writ of habeas corpus on February 23, 2009, in the United States District Court for the Central District of California. (Court Doc. 1.) The petition was transferred to this Court on February 27, 2009. (Court Doc. 4.)

Respondent filed an answer to the petition on May 29, 2009, and Petitioner filed a traverse on June 22, 2009. (Court Docs. 16, 17.)

## STATEMENT OF FACTS[2]

On October 21, 1990, Roberto Eddie Gonzalez, murder victim, was walking to a convenience store in the city of Orange with three of his friends. After crossing the street, three Hispanic youths riding bicycles approached them. Petitioner got off his bicycle and challenged Gonzalez to reveal any gang affiliation and stated "Puro South Side." When Gonzalez did not respond, Petitioner punched him in the face. Gonzalez backed away and then Petitioner pulled a small pistol from his pants and shot Gonzalez in the chest area. The gun misfired and Gonzalez reached toward Petitioner as though he was trying to take the gun away from him. Petitioner pulled back the top of the gun and shot again striking Gonzalez in the chest and killing him. Gonzalez's three friends did not know Petitioner but provided a description of him to police. One of Gonzalez's friends identified Petitioner from a photograph lineup as the shooter. However, the other two did not identify Petitioner. Petitioner's girlfriend informed police that Petitioner asked her to keep a chrome bicycle for him because he had witnessed a shooting and was afraid police might think he did it. Petitioner also changed clothes and gave the clothes he

---

[1] The Court grants Respondent's request to take judicial notice of the California Court's on-line docket located at www.courtinfo.ca.gov pursuant to Rule 201 of the Rules of Evidence. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (noting that a court may take judicial notice of "matters of public record"); United States v. Camp, 723 F.2d 74`, 744 n.1 (9th Cir. 1984) (citing examples of judicially noticed public records).

[2] This factual recitation is derived from the 2007 Board hearing, which quoted the facts from the state appellate court decision underlying Petitioner's commitment offense.

was wearing to a friend. Petitioner was arrested later that same night. All three of Gonzalez's friends identified Petitioner from a six-pack photo lineup.

During an interview, Petitioner described the incident as an accident. He claimed he felt intimidated by Gonzalez because of his age and size, and he never had any intention to shot the gun. Petitioner claimed Gonzalez attempted to wrestle the gun away from him and it accidentally went off.
(Petition, Exhibit C, at 12-15.)

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the

adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Petitioner has the burden of establishing that the decision of the state court is contrary to

4

or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In the last reasoned decision of the Orange County Superior Court, the Court found that there was some evidence to support the Board's 2007 finding that Petitioner would pose an unreasonable risk to public safety if released. Exhibit 1, to Answer. More specifically, the Court stated, "[t]he Board did not abuse its discretion in rendering this finding since the circumstances of the commitment offense do reflect particularly cruel and dispassionate acts by petitioner that were carried out for a very trivial and senseless motive." (Id. at 4.) In addition, the Court found that Petitioner's "documented record of institutional misconduct over the years reflects a pattern of unwillingness to abide by institutional rules which constitutes some evidence supporting the Board's concern over petitioner's ability to abide by societal norms while on parole." (Id.) Furthermore, the Board did not abuse its discretion by considering the psychological evaluation by Dr. Hartung which questioned Petitioner's insight into the commitment offense and Petitioner's lack of sufficient participation in self-help programming. (Id. at 5.) The Court also found some evidence to support the Board's finding that Petitioner did not have adequate parole plans because there was no documentation relating to his residential plans upon his deportation to Guatemala. Lastly, the Board was authorized to consider the opposition by the District Attorney. (Id. at 5-6.) The Court found Petitioner's remaining challenges to the Board's decision to be without merit. (Id. at 6-9.)

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an

adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an

unreasonable risk of danger to society if released from prison.

>    (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Petition, Exhibit C.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

7

Id. at 1214.[3]

At the 2007 hearing, the Board found Petitioner unsuitable for parole based on (1) the circumstances of the commitment offense; (2) institutional behavior; (3) unfavorable psychological evaluation; (4) lack of sufficient self-help therapy; (5) inadequate parole plans; and (6) opposition by the District Attorney's office.

With regard to the circumstances of the commitment offense, the Board found that it was especially cruel and carried out in a very dispassionate manner.[4] This finding is supported by some evidence that Petitioner continues to be an unreasonable risk to public safety. At the time of the offense, Petitioner was 16 years old and a member of the South Side gang. (Petition, Exhibit C, at 12-13, 16.) He intentionally approached the victim and his three friends who were walking to a convenience store. After the victim did not reveal any gang affiliation Petitioner punched him in the face. He then retrieved a gun from his pocket and pointed it at the victim's chest and fired. The gun misfired and the victim attempted to get the gun away from Petitioner, but he fired again striking Gonzalez in the chest and killing him. (Id.) The Board found the motive was very trivial as it was a gang type murder, although it was not clear that it was in retaliation. (Id. at 74-75.) Some evidence supports the Board's finding that the commitment offense was particularly cruel and dispassionate considering that Petitioner armed himself with a

---

[3] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (2008) (citing Lawrence, 44 Cal.4th at 1213-1214.)

[4] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

8

gun, intentionally approached Gonzalez challenging him to disclose his gang affiliation, and then fired the gun twice at him- killing him instantly with the second shot. Petitioner's claim that he had no intention of killing the victim is belied by the record in this case.

The Board next cited Petitioner's record of institutional misconduct. (Petition, Exhibit C, at 76.) In 1997, Petitioner received a rules violation report (CDCR 115)[5] for failing to stand count. In 1998, Petitioner received a 115 for battery on an inmate. In 2003, Petitioner received a 115 for disobeying a direct order-this was later reduced to an administrative violation. (Id. at 26, 76.) Petitioner also received several violations during his initial incarceration at the California Youth Authority, including assault on another inmate, possession of petty contraband, unmade bed while in day room, creating a disturbance, destruction of jail property, failure to clean living area, and failing to obey a direct order. (Id. at 28.) The Board acknowledged that Petitioner had improved his institutional behavior and had not suffered a serious rules violation for nine years; however, some evidence supports the Board's finding that Petitioner remains a threat to public safety if released until he can demonstrate further ability to abide by societal norms while on parole.

The Board considered the psychological evaluation by Doctor Hartung, dated August 13, 2007-which was not supportive of Petitioner's release. 15 Cal. Code Regs. § 2402(b). Dr. Hartung concurred with the previous observation made by Dr. Payne that Petitioner does not demonstrate remorse for the victim. (Petition, Exhibit C, at 37.) Petitioner presented himself as "only mildly superficial and offered a sense of remorse for the victim. He appeared to minimize his relationship with the gang member and minimized his responsibility by describing the event as somewhat of an accident." (Id. at 37-38.) In addition, there appeared to be a pattern of omission of information lending to a pattern of pathological lying. (Id. at 38.) Dr. Hartung assessed Petitioner as a "low moderate to moderate risk" of future violence. (Id.) In a similar vein, the Board found that Petitioner had not participated in sufficient self-help programming to

---

[5] A CDC-115 documents misconduct which is a violation of law or which is not minor in nature. 15 Cal. Code. Regs. § 3312(a)(3).

9

gain insight into the circumstances underlying the commission of the commitment offense. This is supported by the fact that Petitioner did not admit to the circumstances of the commitment offense until as recent as 2002 and only debriefed as a member of the gang as of 2005. To some extent Petitioner continues to claim the incident was an accident, and he has not expressed sincere remorse for his actions and still appears to minimize his conduct. Thus, there is some evidence that without gaining sufficient insight into the circumstances of the commitment offense, Petitioner remains a risk to public safety. In re Shaputis, 44 Cal.4th at 1246 (circumstances of commitment offense and inmate's current attitude toward his crime are, by statute, factors relevant to his suitability for parole).

       The Board also found that Petitioner did not have adequate parole plans upon his deportation to Guatemala. There is an immigrant hold for Petitioner's deportation to Guatemala upon his release from prison. Petitioner submitted documentation supporting a job offer in Guatemala; however, Petitioner did not have documentation regarding a potential residence there. Although Petitioner stated that his father owned two residences in Guatemala and he intended to reside in one of them, Petitioner's father currently resides in California and there was no documentation to support that he had a concrete residence. Thus, the Board was legitimately concerned regarding his ability to succeed on parole without a stable and concrete residence.

       Lastly, the Board pointed out that the District Attorney opposed Petitioner's release. While this is not a statutory basis to deny parole, the Board is required to consider statements submitted by such officials. See Cal. Penal Code § 3046(c) (the Board is required to consider statements and recommendations by the judge, district attorney, and sheriff); In re Dannenberg, 34 Cal.4th 1061, 1084 (2005). A representative from the District Attorney's Office appeared at the hearing and opposed Petitioner's release. This factor was properly considered, among others, in determining whether Petitioner was suitable for release.

       In addition, at the time of the 2007 hearing, Petitioner had served under 16 years of imprisonment on his 19 years-to-life sentence. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir. 2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. Nevertheless, as in this case, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole because in each of these cases the prisoner had not yet served the minimum term of his sentence. Accordingly, the due process concerns expressed in Biggs and Irons are not present.

        The Board also considered the factors in support of suitability for release on parole. 15 Cal. Code Regs. § 2402(d). The Board commended Petitioner for remaining discipline free since 2003, receiving vocational training in auto body and paint mechanics, participation in self-help ethics group in 2006, Breaking the Barriers in 2006, Parenting Program in 2006, Anger Management in 2007, and Making Sense of Addiction in 2007. (Id. at 81-82.) The Board also commended Petitioner for debriefing from the gang. However, on balance, the Board found that these factors did not outweigh the factors of unsuitability and stated that Petitioner's gains must be maintained and increased over a longer period of time.

        After reviewing the record as a whole and considering the factors in combination, there was some evidence to support the Board's finding that Petitioner would pose an unreasonable risk to public safety if released from prison. Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      The instant petition for writ of habeas corpus be DENIED; and

2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

1 Local Rules of Practice for the United States District Court, Eastern District of California.
2 Within thirty (30) days after being served with a copy, any party may file written objections with
3 the court and serve a copy on all parties. Such a document should be captioned "Objections to
4 Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served
5 and filed within fourteen (14) after service of the objections. The Court will then review the
6 Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that
7 failure to file objections within the specified time may waive the right to appeal the District
8 Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 18, 2010**          <u>     /s/ Sandra M. Snyder     </u>
                                         UNITED STATES MAGISTRATE JUDGE